Michail Z. Hack, Esq.
**SCHWARTZ LAW, P.C.**
666 Old Country Road, 9th Floor
Garden City, NY 11530
Telephone: 516-745-1122
*Attorneys for Plaintiff Katherine Salisbury*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――

KATHERINE SALISBURY,                                    Civil Action No.: 15-09799 (AJN)

        Plaintiff,

  against

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendant.
―――――――――――――――――――――――――


**PLAINTIFF KATHERINE SALISBURY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RULE 72(a) OBJECTIONS TO THE APRIL 7, 2017
ORDER OF MAGISTRATE JUDGE ANDREW J. PECK DENYING PLAINTIFF'S
REQUEST TO LEARN OF THE TYPE OF VIDEO CAMERA USED TO SURVEIL
PLAINTIFF**

# INTRODUCTION

Plaintiff Katherine Salisbury, pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, respectfully objects to the Order of Magistrate Judge Andrew J. Peck's April 7, 2017 Order striking Question No.: 2 on Plaintiff's April 4, 2017 correspondence that requested Defendant to identify the make and model of the equipment used to surveil Plaintiff.

If upheld by this Court, the April 7, Order will leave Plaintiff prejudicially bereft of gathering incisive evidence with which to ensure that video surveillance of Plaintiff is accurate, complete and unedited. The integrity of the video-surveillance of Plaintiff is critical because it was the corner-stone upon which Prudential's initial adverse long term disability benefit determination was based.

# BACKGROUND

This ERISA action seeks monetary damages for Defendant's breach of a group long term disability contract issued to Plaintiff's former employer for Plaintiff's benefit. That Policy promises to pay Plaintiff a monthly disability indemnity in the event she is unable to perform the material and substantial duties of her regular occupation due to injury or sickness.

Plaintiff became disabled on May 16, 2008 and Defendant admitted liability and paid her monthly disability indemnity for almost seven years.

Starting on January 6, 2015, a third-party vendor, Ethos Risk Services, surveilled Ms. Salisbury for 16 days. Ex. F. Of those sixteen days of surveillance, there are only a scarce 71

minutes and 33 seconds of actual footage.[1] Additionally, the limited footage provided to Plaintiff during discovery contained temporal anomalies. For example, the time stamp on the surveillance footage taken on January 11, 2015 at 1:40 p.m. skips three minutes to 1:43 p.m. even though the background footage remains constant. There are a quite a few of these temporal anomalies that, combined with the paucity of footage over 16 days is suggestive that the surveillance was edited or redacted.

On January 28, 2015 Dr. Joseph P. Valenza performed an Independent Medical Evaluation of Ms. Salisbury. Ex. A. Dr. Valenza concluded that he did not believe that Ms. Salisbury "[w]ould be able to work consistently full time in an 8 hour a day job, 5 days per week." Ex. A at PRU 077212-001078-002576. Naturally, Defendant did not deny Plaintiff's disability claim based on this report. Rather, Defendant's denial of Plaintiff's disability claim was founded on Dr. Valenza's February 23, 2015 Addendum to Independent Medical Evaluation (hereinafter, "AIME"). Ex. B PRU 077212-001078-001584.

In his AIME, Dr. Valenza did a 180 degree about-face on his previous opinion that Ms. Salisbury could not perform her occupation and concluded that he did "[b]elieve that Ms. Salisbury would be able to work consistently full-time in an 8-hour-a- day job 5 days a week." Ex. B at PRU 077212-001078-001585. This about-face was based exclusively on Dr. Valenza's review of video-surveillance of Ms. Salisbury on January 9,11, 26 and 28, 2015.

By correspondence dated March 23, 2015, Defendant advised Plaintiff that she was no longer eligible for long term disability benefits under the Policy based on Dr. Valenza's AIME.

## PROCEDURAL HISTORY

Subsequent to exhaustion of her administrative remedies, Plaintiff filed this action on December 26, 2015. By Memorandum and Order dated February 28, 2017, Your Honor ruled

---

[1] Said footage can be provided to the Court upon request.

that the Court would review this action *de novo* and referred the case Magistrate Judge Peck on March 17, 2017.

On March 31, 2017, a discovery conference was held before Judge Peck. Multiple discovery issues were addressed[2] but the instant objection is limited to one, narrow issue. Specifically, whether Defendant must answer the following question posed in Plaintiff's April 4, 2017 letter:

2. What type of video-device(s) were used to video-tape Ms. Salisbury? Please name make and model. For example, "Sony Handycam HDR ex 405" or "Apple IPhone 6+."

Ex. D.

By Endorsed Memo filed April 7, 2017, Judge Peck struck question "2" above. Ex. E. This Rule 72 Objection Followed.

## **LEGAL STANADARD**

Rule 72(a) permits a party to "serve and file objections" to a Magistrate Judge's order regarding non-dispositive matters, and provides that the District Court Judge to whom objections are made "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." FRCP 72(a); see also JSC Foreign Econ. Ass 'n Technostroyexport v. Intl Dev. & Trade Servs., Inc., 220 F.R.D. 235, 237 (S.D.N.Y. 2004)("[t]he issue raised by the defendants' Objections is whether the Magistrate Judge's orders were clearly erroneous or contrary to law"). A Magistrate Judge's order is considered "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." In re Comverse Tech. Inc. Sec. Lit., 2007 WL 680779, at *2 (E.D.N.Y. Mar. 2, 2007) (citations omitted).

Further, if 'on the entire evidence,' [the court] is left with the definite and firm conviction that a mistake has been committed,' such an order is deemed "clearly erroneous." Id.

---

[2] Judge Peck stated that the "[C]ourt's order is the transcript" (Ex. C at p. 22) and directed both sides to purchase the transcript. The Transcript (Ex.C.) was received by Plaintiff's counsel on April 11, 2017.

For the reasons discussed below, the April 7, 2017 Endorsed Memo is both clearly erroneous and contrary to law, and should be overturned.

**ARGUMENT**

**BY STRIKING PLAINTIFF'S DEMAND TO
LEARN THE TYPE OF VIDEO EQUIPMENT USED TO SURVEIL
HER, PLAINTIFF IS LEFT PREJUDICIALLY BEREFT OF GATHERING
INCISIVE EVIDENCE TO VERIFY THAT SHE HAS ALL MATERIAL
GENERATED IN THE COURSE OF MAKING HER BENEFIT DETERMINATION**

In its February 28, 2017 Memorandum and Order, this Court denied Plaintiff "plenary discovery." Salisbury v. Prudential Ins. Co. of Am., 2017 WL 780817, at *5–6 (S.D.N.Y. Feb. 28, 2017). In reaching this conclusion, the Court relied on authorities which cautioned against the unwarranted expansion of the "administrative record,"[3] absent "good cause." See eg., Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 293-94 (2d Cir. 2004); DeFelice v. Am. Intern'l. Life Assurance Co. of N. Y., 112 F.3d 61, 66-67 (2d. Cir. 1997); Tretola v. First Unum Life Ins. Co., 2014 WL 2815586, at *2 (S.D.N.Y. June 23, 2014).

Plaintiff's request for the identification of the type of equipment used to surveil her is distinguishable, however, because she does not seek expand the record, rather, she wishes to ensure that it is accurate and complete.

The Department of Labor regulation governing fair claims procedures in ERISA governed claims is codified at 29 C.F.R. 2560.503-1 (hereinafter, the "Regulation"). In relevant part, the Regulation provides that a claim administrator, such as Prudential is required to produce, upon an adverse benefit determination or an adverse benefit determination upon review all documents records and other information that were "[w]ere . . . or generated in the course of

---

[3] The term "administrative record," is not defined nor is it referenced in ERISA's highly-reticulated statutory and regulatory scheme and Plaintiff particularly disagrees with this nomenclature in this case inasmuch as Defendant, Prudential, is not designated by the Plan Documents as being the appropriate named fiduciary or administrator with the authority to review and decide Plaintiff's appeal of its initial adverse benefit determination.

making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(ii), (j)(3). Plaintiff wishes to ensure that she has all information "generated" in the course of making her benefit determination.

Even though we believe the "good cause" requirement set forth in the above-cited precedent is not applicable to disappointed plan beneficiary seeking to ensure that all information generated in the course of making her benefit determination is before the Court, Plaintiff has good cause. First, it defies credulity that only 71 minutes and 33 seconds of video-surveillance was captured over the course of 16 days of surveillance.

Next, there are multiple temporal anomalies in the video surveillance where the background video remains constant but the timer skips forward by one or two minutes. During the March 31, 2017 discovery conference before Judge Peck, counsel for Plaintiff explained that we wanted to know the type of equipment used to surveil plaintiff in order to ascertain whether the temporal anomalies were indicative of incomplete or edited footage.

> MR HACK: The questions are going to be a little detailed. In other words, what type of equipment did you use?
>
> THE COURT: Who cares?
>
> MR. HACK: Because that will enable me to find out what format it was delivered in and the time stamps and everything else.
>
> THE COURT: For what purpose?
>
> MR. HACK: I want to figure out if they cut out the portion of my client having difficulties.
>
> THE COURT: I would give you that one extra question, which is did they tape regardless of what Ms. Salisbury was doing, or were they only looking for evidence of non-disability. So, if she was limping, falling, picking whatever words you want, did they purposely not video that. That would be the question. What

>> medium it's on and what distance they filmed from and all of that, if this were a slip-and-fall case, that might or might not be relevant. But it's not in this case. So, if you want to write the questions, write them. If there are more than four, I suspect that if Prudential then challenges it, that I'm going to strike it.

Ex. C. at 13.

The Court suggested that an affidavit or a statement from the videographer should satisfy the Plaintiff's concern over the temporal anomalies:

>> THE COURT: In the event that the videographer is willing to say, we may have stopped the recording, but there is no other tape. We did not edit anything out. This is all the tape we filled of Ms. Salisbury, then we're done, or at least for now.

Ex. C. at 12.

Plaintiff should be allowed to test the evidence and not rely on the word of a third-party whom Plaintiff has not been permitted to depose. Plaintiff has significant concerns that video surveillance of her demonstrating her physical restrictions and limitations may have been left on the cutting room floor.

Plaintiff's simple request not burdensome, in the least, and is narrowly tailored to discover admissible, potentially dispositive evidence. It should be noted that subsequent to the conference, Plaintiff's counsel conferred with a forensic surveillance effort who confirmed that the make and model of the camera used to film was indispensible to determining whether the footage was edited.

## **CONCLUSION**

Plaintiff respectfully submits that Judge Peck's April 7, 2017 Order striking Question No.:2 is both contrary to law and clearly erroneous and that Defendant should be required to answer Plaintiff's question regarding the make and model of the video equipment used to surveil her.

Dated: Garden City, New York
      April 14, 2017

    Respectfully submitted,
    **SCHWARTZ LAW, P.C.**

By:  _/s/ Michail Z. Hack_____
    Michail Z. Hack, Esq.
    666 Old Country Road, 9th Floor
    Garden City, NY 11530
    Telephone: 516-745-1122
    *Attorneys for Plaintiff Katherine Salisbury*

To:
Ada Wilona Dolph, Esq.
**SEYFARTH SHAW LLP**
233 South Wacker Drive, Suite 8000
Chicago, IL, 60606
Telephone: 312-460-5000
*Attorneys for The Prudential Insurance Company of America*

**CERTIFICATION**

I, Michail Z. Hack, do hereby certify that a true and accurate copy of the foregoing was served by ECF this 14th day of April, 2017.

/s/ *Michail Z. Hack*

Michail Z. Hack