UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 13 2017

Katherine Salisbury,

             Plaintiff,

–v–

Prudential Insurance Co. of America,

             Defendant.

15-cv-9799 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

     Before the Court is Plaintiff Katherine Salisbury's objections to Magistrate Judge Peck's April 7, 2017 Order. For the following reasons, the Court denies Plaintiff's objection.

**I.    Background**

     In this Employee Retirement Income Security Act ("ERISA") case, Plaintiff Salisbury challenges the decision of Defendant, the Prudential Insurance Company of America ("Prudential"), to deny her long-term disability benefits. Dkt No. 4. In a Memorandum & Order dated February 28, 2017, the Court set the standard of review in this case as *de novo*. Dkt No. 39. The Court also denied Plaintiff Salisbury's request for plenary discovery because "when reviewing claim denials, whether under the arbitrary and capricious or *de novo* standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim." *Id.* at 11 (alteration omitted) (quoting *Halo v. Yale Health Plan*, 819 F.3d 42, 60 (2d Cir. 2016)); *see also Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 293-94 (2d Cir. 2004); *DeFelice v. Am. Int'l. Life Assurance Co. of N.Y.*, 112 F. 3d 61, 66-67 (2d. Cir. 1997); *Tretola v. First Unum Life Ins. Co., No. 13 Civ. 231 (PAE)*, 2014 WL 2815586, at *2 (S.D.N.Y. June 23, 2014). The Court noted that Plaintiff could seek discovery beyond the

1

administrative record if she demonstrated "good cause" for doing so. Dkt No. 39 at 11-12. The parties continued to have discovery disputes, and the Court referred this case to Magistrate Judge Peck for general pretrial on March 17, 2017. Dkt Nos. 41-42. Accordingly, Judge Peck was responsible for all "scheduling, discovery, non-dispositive pretrial motions, and settlement." Dkt No. 42.

The present discovery dispute surrounds video surveillance footage taken of Plaintiff Salisbury. Following an examination of Plaintiff, a Dr. Joseph Valenza originally concluded that Salisbury was not "able to work consistently full time in an 8 hour a day job, 5 days per week." Mot. at 3 (Dkt No. 52); *see also* Def. Ex. A at 3 (Dkt 57-1). After reviewing video surveillance of Plaintiff Salisbury taken by a third party vendor in January 2015, Dr. Valenza changed his opinion. Mot. at 3; Dkt No. 41 at 1. Plaintiff claims that "[t]here are some irregularities in the video surveillance," *see* Def. Ex. A at 10, such that the videotape may have been edited or altered, Mot. at 6-7. Plaintiff asked Judge Peck for permission to ask several questions about the video and its preparation. Def. Ex. A at 11-12; *see also* Dkt No. 41. One such question was what type of equipment was used to create the video. The following exchange occurred between Plaintiff's counsel and Judge Peck during a hearing scheduled to address the parties' discovery disputes:

> MR. HACK: The questions are going to be a little detailed. In other words, what type of equipment did you use?
>
> THE COURT: Who cares?
>
> MR. HACK: Because that will enable me to find out what format it was delivered in and the time stamps and everything else.
>
> THE COURT: For what purpose?
>
> MR. HACK: I want to figure out if they cut out the portion of my client having difficulties.

> THE COURT: I would give you that one extra question, which is did they tape regardless of what Ms. Salisbury was doing, or were they only looking for evidence of non-disability. So, if she was limping, falling, picking whatever words you want, did they purposely not video that. That would be the question. What medium it's on and what distance they filmed from and all of that, if this were a slip-and-fall case, that might or might not be relevant. But it's not in this case. So, if you want to write the questions, write them. If there are more than four, I suspect that if Prudential then challenges it, that I'm going to strike it. I will sort of give the don't be greedy speech, which is if you try in writing the questions to go from a few questions to 20 questions and a lot of them are ridiculous in this case, I may toss the whole thing.

Def. Ex. A 13-14. In sum, Judge Peck granted Plaintiff's request to ask a few questions regarding the video surveillance, but warned Plaintiff that he was likely to strike questions if they were too voluminous or irrelevant.

Plaintiff subsequently propounded twenty-six questions about the video surveillance. Dkt No. 46-1. At issue here, Plaintiff asked "What type of video-device(s) were used to video-tape Ms. Salisbury? Please name make and model. For example, 'Sony Handycam HDR ex 405' or 'Apple IPhone 6+.'" Mot. at 4; Opp. at 6 (Dkt No. 57). Defendant objected to this question. Dkt No. 46. Consistent with his earlier warning, Judge Peck struck the question. Dkt No. 47.

Plaintiff was nonetheless permitted to propound some questions regarding the video footage. In response, Plaintiff received a declaration from Christopher Humburg, a video editor who reviewed the video surveillance at issue in this case. Def. Ex. B (Dkt No. 57-2). In that declaration, Humburg attested, among other things, that "[a]ll of the video footage obtained during surveillance of Ms. Salisbury was provided to Prudential completely intact and without having been edited in any way." *Id.* at 2-3. Humburg further explained that the "anomaly" or "irregularity" in the footage noted by Plaintiff's counsel, specifically, that the video footage "skips" from 1:40 p.m. to 1:43 p.m., *see* Mot. at 3, "was not due to any stoppage by the investigator in filming, but rather due to a software error caused when the video footage was

3

uploaded . . . using wireless technology," likely caused by a drop in the wireless connection. Def. Ex. B at 3.

Plaintiff objects to Judge Peck's decision to strike the question related to the make and model of the camera used for the video surveillance. Dkt Nos. 51-52. On April 28, 2017, Defendant filed a response to Plaintiff's objection. Dkt No. 57.

## II. Discussion

A district court may refer non-dispositive matters to a magistrate judge. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). After the magistrate judge issues his decision on such a matter, the parties "may serve and file objections to the order within 14 days after being served with a copy" of the magistrate judge's order. Fed. R. Civ. P. 72(a). The district court may then "modify or set aside any part of the order," but only if it is "clearly erroneous or is contrary to law." *Id.*; *see also Marom v. City of New York*, No. 15-cv-2017 (PKC), 2017 WL 1437195, at *2 (S.D.N.Y. Apr. 21, 2017); *City of New York v. FedEx Ground Package System, Inc.*, No. 13 Civ. 9173 (ER), 2017 WL 633445, at *3 (S.D.N.Y. Feb. 14, 2017) ("Pretrial discovery motions are considered nondispositive and are reviewed for clear error."). "A magistrate judge's findings may be considered 'clearly erroneous' where 'on the entire evidence, the [district court] is left with the definite and firm conviction that a mistake has been committed.'" *In re Comverse Technology, Inc. Derivative Litigation*, No. 06-CV-1849 (NGG)(RER), 2006 WL 3511375, at *3 (E.D.N.Y. Dec. 5, 2006) (alteration in original) (quoting *Easley v. Cromartie*, 532 U.S. 234, 243 (2001)). This is a "highly deferential" standard that "imposes a heavy burden on the objecting party." *Id.* (quoting *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002)).

The Court concludes that Plaintiff has not met the heavy burden of proving clear error. Because this is an ERISA case, additional discovery is permitted only if Plaintiff demonstrates "good cause" for seeking such discovery. *See Halo*, 819 F.3d at 60; *Locher*, 389 F.3d at 293-94; *DeFelice*, 112 F. 3d at 66-67; *Tretola*, 2014 WL 2815586, at *2. Jude Peck did not commit clear error or act contrary to law in concluding that Plaintiff failed to satisfy this standard. Plaintiff never persuasively explained, either to Judge Peck or in her objection to this Court, why knowing the make and model of the video camera used to surveil Plaintiff would illuminate whether the video footage was edited or altered. Additionally, the probative value of this evidence, if any, was significantly reduced by the Humburg declaration, which not only attested that there was no alteration to the footage, but also explained Plaintiff's purported "irregularities" in the video footage. Def. Ex. B. Because Plaintiff's ultimate goal was to determine whether the video footage was altered, and because this inquiry was answered without the question regarding the make and model of the video camera, Judge Peck did not err in concluding that Plaintiff failed to demonstrate "good cause" for asking the question.

## III.   Conclusion

For the aforementioned reasons, the Court denies Plaintiff's objection to Judge Peck's April 7, 2017 order.

This resolves Docket Numbers 51 and 52.

SO ORDERED.

Dated: June 13, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge